IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LUMINO, INC.,

                      Plaintiff,                    OPINION AND ORDER

v.

                                                  24-cv-189-wmc

LUMI IMPORTING LTD d/b/a
LUMI HOME FURNISHINGS,

                      Defendant.

Plaintiff Lumino, Inc., filed this trademark infringement and deceptive trade practices lawsuit against defendant Lumi Importing Ltd. d/b/a "Lumi Home Furnishing." Lumi Home Furnishing subsequently moved to dismiss for lack of personal jurisdiction or, in the alternative, to transfer this matter to the Northern District of Georgia. (Dkt. #44). Because this court has personal jurisdiction over Lumi Home Furnishing and the relevant factors do not weigh in favor of transfer, the court will deny defendant's motion in its entirety.

JURISDICTIONAL FACTS[1]

Lumino is a home décor business incorporated and headquartered in Wisconsin. Lumino designs window covering and drapery products. Lumino owns "LUMINO," the trademark registration in connection with the sale of its products and has used it since March 2017. Lumino offers to sell and sells its products under its trademarks on its website

---

[1] The court draws the following facts from the allegations in plaintiff Lumino's amended complaint (dkt. # 36), as well as the parties' evidentiary submissions (dkt. 21, dkt. 26, dkt. 27, dkt. 28, and dkt. 45), which the court may consider in deciding a motion to dismiss on jurisdictional grounds. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

and in-store and online at large retailers throughout the United States.

Lumi Home Furnishings is also a home décor company, and it is incorporated and headquartered in Georgia. All of Lumi Home Furnishings' offices, warehouses, employees, documents, operations, and assets are in Georgia. Lumi Home Furnishings imports window covering products, then markets and sells them throughout the United States. Lumi Home Furnishings sells its products under the design mark pictured below.



Lumi Home Furnishings was assigned all rights to this mark by Li-Ming Cheng, a non-defendant who resides in Taiwan and first filed an intent-to-use trademark application in March 2020. From 2019 through 2023, Wisconsin accounted for 1.5% of Lumi Home Furnishings' total sales in the United States.

Lumino first became aware of Lumi Home Furnishings and its use of the disputed marks in August 2023. Soon after, Lumino sent a cease-and-desist letter informing Lumi Home Furnishings that they may be infringing on its mark. This led to negotiations between the parties. In November 2023, Lumi appeared to agree on its use of the name "LumiSpace" moving forward, but in December, it allegedly abruptly changed course and returned to use of the Lumi trademark. This prompted further, ultimately unsuccessful, negotiations.

After negotiations ceased, an agent for Lumino also went to Lumi Home Furnishings' website, purchased drapery hardware products, and arranged delivery to her home address in Madison, Wisconsin. After making the purchases, the agent received emails confirming that: (1) she had purchased the products; (2) the purchases had been shipped; and (3) the purchases had been delivered. The agent also confirmed that Lumi Home Furnishings' products were available to be purchased and delivered to her Wisconsin home from other retailers, including Amazon.com, Lowe's, Target, and The Home Depot.

OPINION

Defendant Lumi Home Furnishings moves to dismiss the complaint for a lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or in the alternative, transfer venue under 28 U.S.C. § 1404(a). The court addresses these motions below.

I. Personal Jurisdiction

A federal court can exercise personal jurisdiction over a nonresident defendant when the person or corporation would be amenable to suit under the laws of the state in which the federal court sits, subject to the constitutional due process restraints of the minimum contacts test. *KM Enterprises Inc. v. Global Traffic Technologies, Inc.*, 725 F.3d 718, 723 (7th Cir. 2013). While the plaintiff bears the burden of establishing personal jurisdiction, *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. as corrected May 12, 2014), when a district court rules on the defendant's motion to dismiss "without the benefit of an evidentiary hearing, the plaintiff bears only the burden

of making a prima facie case for personal jurisdiction." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423 (7th Cir. 2010).

Here, plaintiff argues that defendant is subject to *specific* personal jurisdiction, which allows for jurisdiction over nonresident defendants only if a court of the state in which it sits would have jurisdiction. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003). This typically requires a two-step analysis, determining: (1) whether the law of Wisconsin (specifically Wis. Stat. § 801.05) subjects defendants to personal jurisdiction; and (2) whether the exercise of personal jurisdiction comports with the requirements of federal due process. *Id.* However, because the Wisconsin long-arm statute "is intended to reach to the fullest extent allowed under the due process clause," the inquiry can sometimes be collapsed into one step. *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir. 1990). Regardless, a number of the subsections of 801.05 would appear to apply. *E.g.,* Wis. Stat. § 801.05(1)(d) (Wisconsin courts have personal jurisdiction "[i]n any action whether arising within or without this state, against a defendant who when the action is commenced, [was] engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise."); § 801.05(3) (In any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant."); § 801.05(5)(a) (in any action which "[a]rises out of a promise, made anywhere to the plaintiff . . . by the defendant to perform services within this state").

Thus, the court will presume, without deciding, that defendant's activities within the state would satisfy Wisconsin's long-arm statute and focus its analysis on constitutional

due process restraints. In particular, the Seventh Circuit has condensed the due process requirements for specific jurisdiction to a three-part test:

> First, the defendant's contacts with the forum state must show that it purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state. Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019) (cleaned up).

### A. Purposeful Direction

As for purposeful direction, plaintiff argues defendant's online commercial activity is sufficient, pointing to defendant's website that: offers products to residents in this district; allows residents to purchase those products and have them shipped to this district; and facilitates email communication between defendant and those residents. Plaintiff also highlights that defendant's products are available on other retailers' websites. Certainly, these allegations support a prima facie case of defendant purposefully directing its activity at Wisconsin.

Indeed, the facts of this case are similar to those in *NBA Props., Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022), where the Seventh Circuit found that a retail store had purposefully directed activity to Illinois after it:

> established an online store, using a third-party retailer, Amazon.com. Through this online store, it unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so. When an order was placed, it filled the order, intentionally shipping an infringing product to the customer's designated Illinois address.

*Id*. at 624. Similarly here, defendant has allegedly established its own online store and made its products available using third-party retailers. Through these online stores, it has further, unequivocally asserted a willingness to ship goods to Wisconsin. For example, when plaintiff's agent purchased products from defendant's website, defendant filled those orders, intentionally shipping allegedly infringing products to customers in Wisconsin.

Nevertheless, defendant disputes that these allegations are sufficient, citing *Link Snacks, Inc. v. Jack & Friends LLC*, Case No. 22-CV-290-WMC, 2023 WL 3600688 (W.D. Wis. May 23, 2023). In *Link*, this court held that it lacked personal jurisdiction over a company with less than .9% of its sales to Wisconsin, because those sales resulted from untargeted online sales. However, this does not compel a ruling in defendant's favor. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (A decision of a federal district court judge is not binding, even upon the same judge in a different case) (citing 18 J. Moore *et al.*, Moore's Federal Practice § 134.02[1] [d], p. 134-26 (3d ed. 2011). Regardless, this case is readily distinguishable from *Link*. To begin, the share of defendant's sales in Wisconsin is greater here. Moreover, in *NBA Props.*, a case not considered by this court in *Link*, the Seventh Circuit established binding precedent that a single sale to a district states a *prima facie* case for purposeful direction. 46 F.4th at 624. Finally, defendant ignores that it actively negotiated with plaintiff and allegedly promised to the use of an alternate mark before acting in bad faith by abruptly changing course and ceasing negotiations, causing plaintiff to file the present action to resolve its trademark and unfair competition claims as set forth in Section B below. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985) ("prior negotiations and contemplated future consequences . . . must be evaluated in

6

determining whether the defendant purposefully established minimum contacts within the forum."). Accordingly, plaintiff has made a *prima facie* showing that defendants purposefully directed its sales activities to Wisconsin.

### B. Relatedness

"The proper exercise of specific jurisdiction also requires that the defendant's minimum contacts with the forum state be suit-related." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 400 (7th Cir. 2020) (internal quotations omitted). This requirement is met when direct sales from the defendant in the forum state involve the infringing product. *Id.*, at 401-02.

Here, defendant does not contend in its briefing that this litigation is unrelated to its activity in Wisconsin. Under the Lanham act, 15 U.S.C. § 1051 *et seq.*, the holder of a registered mark may bring a civil action against anyone employing an imitation of it in commerce when "such use is likely to cause confusion, or to cause mistake, or to deceive." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004)); *see also* 15 U.S.C. § 1114(1)(a). "Plaintiffs do not need to show actual confusion to establish violations of these provisions, only a likelihood of confusion." *NBA Props.*, 46 F.4th at 626 (citing *Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990).

The Seventh Circuit has held that "[a] vendor violates the Lanham Act when it lists for sale infringing products." *NBA Props.*, 46 F.4th at 626-27. As a result, by alleging that defendant listed infringing products for sale in this district via its website, and selling those products in this district, plaintiff has made a prima facie case that defendant's contacts are sufficiently related to the alleged conduct in this district. Regardless, this court has an

7

ample basis to find personal jurisdiction over defendant to resolve the parties' state law claims, which is adequate to proceed on all claims under 28 U.S.C. § 1367.

### C. Notions of Fair Play and Substantial Justice

As for determining whether litigating this case in this district comports with traditional notions of fair play and substantial justice, the alleged facts support this as well. Courts apply a sliding scale test with "[t]he burden on the defendant," considering the strength of its contacts the forum state, including:

> the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the underlying dispute, and the shared interest of the several States in furthering fundamental substantive social policies.

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781 (7th Cir. 2003) (internal quotation marks omitted). Moreover, "[t]hese factors rarely will justify a determination against personal jurisdiction" because there are other mechanisms available to the court -- such as choice of law and transfer of venue -- to accommodate the various interests at play." *Id.* at 781 n.10; *see also Curry*, 949 F.3d at 402 ("as long as the plaintiff has made a threshold showing of minimum contacts, that showing is generally defeated only where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'") (quoting *Burger King*, 471 U.S. at 477).

Here, defendant argues that jurisdiction is unreasonable because: it never specifically marketed its products in Wisconsin; only 1.5% of its national sales are in Wisconsin; it did not foresee being brought to court in Wisconsin; and litigation here

8

would be unduly burdensome relative to the Northern District of Georgia.  However, the Seventh Circuit has explained that there is no unfairness in "making a seller defend a suit in a state where it structured its business to 'easily serve the state's consumers,'" *NBA Props.*, 46 F.4th at 627 (quoting *Curry*, 949 F.3d at 402), or "requiring a defendant to defend a lawsuit in the courts of the state where, through the very activity giving rise to the suit, it continues to gain so much." *Id.*  Based on those principles, the court concludes that asserting personal jurisdiction over defendant would not violate traditional notions of fair play and substantial justice because defendant has structured its business to easily serve residents of this district by placing goods for sale on its website and shipping them to customers in this state and continues to financially benefit from that structure.

To be sure, defending against a lawsuit in Wisconsin will likely burden defendant more than litigating in Georgia.  However, Wisconsin courts have an interest in providing a forum to resolve disputes with entities formed under its laws, such as plaintiff, and it will be more convenient for both parties to have a Wisconsin court resolve claims that are based on Wisconsin law.  Accordingly, finding personal jurisdiction in Wisconsin is not unreasonable, defendant's motion to dismiss will be denied.

**II. Motion to Transfer**

Alternatively, defendant moves to transfer this matter to the U.S. District Court for the District of Northern Georgia.  District courts may transfer any civil action to another district where venue is proper for the convenience of the parties and witnesses or in the interest of justice.  28 U.S.C. § 1404(a).  "In passing on a motion for transfer, the district judge must consider the statutory factors in light of all the circumstances of the case."

*Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id.* The movant "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Id.* at 219-20. Certainly, defendant would be subject to personal jurisdiction in Georgia, where it is incorporated and has its principal place of business. Therefore, the court limits its analysis to the interests of justice and the convenience of the parties and witnesses.

### A. Convenience of the parties and witnesses

When evaluating convenience to the parties and witnesses, courts generally consider (1) the plaintiff's choice of forum, (2) the availability of and access to witnesses, (3) the availability and access for the parties, (4) the location of material events, and (5) the relative ease of access to sources of proof. *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978-79 (7th Cir. 2010). Defendant primarily argues that plaintiff's choice of forum should be given little deference and that the material events and access to proof are sufficient to warrant transfer.

#### 1. Choice of forum

This factor weighs slightly in plaintiff's favor. Generally, plaintiff's choice of forum is given substantial weight, particularly when it is their home forum; however, this deference is lessened when "another forum bears a stronger relationship to the dispute or the plaintiff's choice of forum has no connection to the material events in question."

*Aldridge v. Forest River, Inc.*, 436 F.Supp.2d 959, 960-61 (N.D. Ill. 2006) (citing *Chi., Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955)). This reduction in deference to plaintiffs has been specifically noted in cases where, as here, defendant's goods are sold and advertised nationwide. S*ee IMM Holdings, Ltd. v. HK Parts, Inc.*, No. 19 C 6451, 2020 U.S. Dist. LEXIS 172918, at *16 (N.D. Ill. Sept. 22, 2020) (collecting cases). Accordingly, plaintiff's choice of the Western District of Wisconsin weighs slightly against transfer.

### 2. Witnesses

This factor is neutral. On a motion to transfer, the movant must specify the key witnesses to be called and "make at least a generalized statement of what their testimony would . . . include[ ]." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). Here, defendant did not include a list of witnesses or their testimony, but does suggest that Georgia is more convenient due to its employees and CEO living there. Plaintiff argues that this benefit is tenuous at best, highlighting the difficulty they had finding defendant's employees, while attempting to serve defendant and the commensurate need for their own witnesses to travel. Moreover, the only witnesses that defendant identifies are employees, who presumably would be available regardless of the forum. *Moore v. Motor Coach Industries, Inc.*, 487 F. Supp. 2d 1003, 1007 (N.D. Ill. 2007) ("[entity defendant] is presumed to assure the appearance and testimony of its employees so the convenience of those witnesses does not weigh in favor or against transfer"). Finally, plaintiff's witnesses are all located in Wisconsin.

### 3. Parties

This factor is also neutral. Because both parties reside in their favorable forum, it would be no less convenient for plaintiff to litigate in Georgia than for defendant to litigate in Wisconsin. *Republic Technologies (NA), LLC v. BBK Tobacco & Foods, LLC*, 240 F. Supp. 3d 848, 853 (N.D. Ill. 2016).

### 4. Location of material events

This factor is neutral as well. In trademark infringement cases, other courts in this circuit have identified the situs of material events as the location "where the allegedly infringing products are designed, manufactured and marketed." *Restoration Hardware, Inc. v. Haynes Furniture Co. Inc.*, 2017 WL 2152438, at *3 (N.D. Ill. May 17, 2017) (citation omitted). However, courts also consider "where confusion is likely to occur." *Confederation Des Brasseries De Belgique v. Coors Brewing Co.*, No. 99 C 7526, 2000 WL 88847 (N.D. Ill. Jan. 20, 2000). Neither of these considerations favor transfer.

As to where the allegedly infringing products are designed, manufactured and marketed, defendant attests that it developed the disputed trademark and logo in Georgia and that all its assets and operations are in Georgia as well. However, plaintiff's investigation of defendant's Georgia headquarters during its attempt at service revealed a warehouse with no signage or employees capable of accepting service. (Dkt. 28 at ¶¶ 3 and 4.) Additionally, review of the application for defendant's mark indicated that the owner at that time was Li-Ming Cheng, a non-party who resides in Taiwan.

As to where confusion is likely to occur, the record indicates that defendant has not specifically marketed its products to Wisconsin, and that state accounts for 1.5 percent of

defendant's sales in the United States from 2019 through 2023. Meanwhile, in Georgia, defendant appears to have no signs advertising its presence at its headquarters, and there is no information about defendant's marketing and sales data for Georgia or the rest of the country. As a result, confusion appears to be just as likely in Wisconsin as in Georgia. *But see Interlochen Ctr. for Arts v. Interlocken Int'l Camp*, No. 01 C 7082, 2002 WL 31040346 (N.D. Ill. Sept. 12, 2002), at *5 (the majority of new enrollment at the camp was from the east coast, as opposed to 1% in the Northern District of Illinois); *Link Snacks* 2023 WL 3600688, at *4 (alleged injury by defendants was "primarily in New York or the surrounding region, where Jack & Friends is headquartered, its products are manufactured, and the bulk of its retail sales occur"). Because the likelihood of confusion is not concentrated in any one state and the development and creation of the disputed mark appears to have happened outside of Georgia, this factor remains neutral.

### 5. Ease of access of proof

This factor, too, is neutral. Defendant argues that transfer is warranted because allegedly all relevant documents and evidence is in Georgia. However, "[e]ven if that is all true, both the Seventh Circuit and this court have recognized that technological advancements have all but eliminated the importance of the location of documents and other sources of proof in § 1404(a) transfer analysis." *Grand River Enters. Six Nations Ltd. v. VMR Prods. LLC*, No. 13-CV-104-WMC, 2013 WL 6185205, at *7 (W.D. Wis. Nov. 26, 2013) (collecting cases). Moreover, because discovery will be necessary from both plaintiff in Wisconsin and defendant in Georgia, it is unclear why one forum would be preferable to the other.

### B. Interests of justice

The "interest of justice" is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). This includes analysis of "(1) docket congestion and likely speed to trial in the transferor and potential transferee forums; (2) each court's relative familiarity with the relevant law; (3) the respective desirability of resolving controversies in each locale; and (4) the relationship of each community to the controversy." *Id.* (added numeration and omitted internal citations). The interest of justice factors may be determinative, even where the convenience factors point in the opposite direction. *Id.*

Citing *Merrill Iron & Steel, Inc. v. Yonkers Contr. Co.*, No. 05-C-104-S, 2005 U.S. Dist., LEXIS 9730, (W.D. Wis. May 18, 2005), and *Bye, Goff, Rohde & Skow, Ltd. v. Casey, Gerry, Schenk, Francavilla, Blatt & Penfield, LLP,* No. 07-C-003-S, 2007 U.S. Dist. LEXIS 32903 (W.D. Wis. May 2, 2007), defendant argues that the interests of justice would not be served by proceeding in a forum that may lack personal jurisdiction over it. However, as discussed above, defendant's contacts with this district are more than sufficient to support personal jurisdiction. Accordingly, the interests of justice do not support transfer to Georgia.

As all of the factors are either neutral or favor maintaining this action in Wisconsin, therefore, defendant has not shown that transfer to the Northern District of Georgia is clearly more convenient. Therefore, defendant's alternative motion to transfer this case to the Northern District of Georgia will be denied.

ORDER

IT IS ORDERED that: Defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, transfer this case to the Norther District of Georgia is DENIED.

Entered this 4th day of August, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge