IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LUMINO, INC.,

                Plaintiff, Counter Defendant,       OPINION AND ORDER

     v.                                        24-cv-189-wmc

LUMI IMPORTING LTD,

                Defendant, Counterclaimant.

Plaintiff Lumino, Inc., ("Lumino") filed this trademark infringement and deceptive trade practices lawsuit against defendant Lumi Importing Ltd. d/b/a "Lumi Home Furnishings" ("Lumi") Previously, Lumi moved to dismiss for lack of personal jurisdiction or, in the alternative, to transfer this matter to the Northern District of Georgia. (Dkt. #44). After this motion was denied (dkt. #65), however, Lumi filed an answer and included seven counterclaims against Lumino. (Dkt. #66.) Pending before the court are Lumino's motion to dismiss Counts II through VII of Lumi's counterclaim, the parties' motions for partial summary judgment on plaintiff's claims, Lumi's motion to file a supplemental statement of proposed fact, Lumi's motion to bifurcate the trial and extend the deadline to disclose its damages expert, and Lumi's motion to continue trial. (Dkt. ##69, 74, 87, 115, 120, and 132.)

For the following reasons, the court will: grant in part and deny in part Lumino's motion to dismiss and deny Lumino's motion for partial summary judgment; deny Lumi's motion for partial summary judgment and motion to supplement the record; grant in part and deny in part Lumi's motion to bifurcate the trial and defer certain expert discloses; and deny Lumi's motion to continue trial.

FACTUAL BACKGROUND[1]

**A. Plaintiff Lumino's Trademark Registrations and Use**

Lumino was founded and incorporated in Wisconsin in 2001. On October 23, 2017, Lumino filed two U.S. trademark applications of the LUMINO Mark. The mark consists of standard characters, without claim to any particular font style, size or color, as pictured below.

# LUMINO

One application was based on the use in commerce for "drapery hardware, namely, traverse rods, poles, curtain rods and finials" in International Class 20 and alleged March 6, 2017, as the dates of first use anywhere and in U.S. commerce. As part of this application, Lumino's attorney of record submitted a "Statement of Use," that included photographs of boxes with a stylized logo (pictured below) (the "Lumino Logo") and labels indicating they contained drapery hardware and were going to be shipped out of Wisconsin. This application was later approved with a registration date of May 22, 2018, and given U.S. Trademark Registration Number 5,475,549 (the "'549 Registration").

---

[1] Because there are currently motions to dismiss and for summary judgment before the court, two different standards apply regarding where facts are drawn from and how the court must accept them. In Section A, the facts are drawn from the allegations and exhibits in defendant's counterclaim. (Dkt. #66, at 16-30); *see Doe v. Columbia College Chicago*, 933 F.3d 849, 854 (7th Cir. 2019) (the court "may consider documents attached to the pleadings so long as the documents are referred to in the complaint and central to the plaintiff's claims."). In Sections B-E, the court drew undisputed, material facts from Lumino's reply in support of its proposed findings of fact (dkt. #107) and Lumi's reply in support of its proposed findings of fact (dkt. #109).



The other application was based on use in commerce for "[i]nterior window shades, namely, cellular shades; Venetian blinds; faux interior window wood blinds; woven wood window shades and vertical blinds" in International Class 24 and alleged October 15, 2017, as the dates of first use anywhere and in U.S. commerce. As part of this application, Lumino submitted a "Statement of Use" that included photographs of boxes with their logo and labels indicating that they contained window shades/blinds and were going to be shipped out of Wisconsin. This application was later approved with a registration date of June 12, 2018. and given U.S. Trademark Registration Number 5,490,969 (the "'969 Registration").

Sometime after October 23, 2017, Lumino also began operating a website at https://luminodecor.com/ (the "Website"). The earliest images of the Website before the court are from August 2018. At this time the Website consisted of four pages: a home page and three subpages. The first subpage, titled "Drapery Hardware," informed visitors that Lumino has specialized in creating drapery hardware collections for over 15 years, their products could be purchased in store and online with various retailors, and had information on four product types: single rod sets, double rod sets, holdbacks, and drapery clip rings. The second subpage, titled "Where to Buy," identifies where their products may be purchased and under which brands they are sold. Specifically, under "Walmart," it lists

Better Homes and Garden and Mainstays; under "Lowe's," it lists Allen+Roth and Style Selections; under "Menards," it lists Intercrown; and under "Wayfair," it lists Lumino. The final subpage, titled "About Us," details Lumino's founding in Madison, its extensive sales at mass market retailers and that, because of the success, Lumino has now expanded to selling direct through online channels. Lumino later added window blinds and shades to the product offerings on its website.

In 2023, Lumino further filed Combined Declarations of Use and Incontestability under Sections 8 & 15 to maintain the '549 and '969 Registrations. In these declarations, Lumino's attorneys of record averred that the LUMINO Mark remained in continuous use in commerce for five consecutive years after the date of registration and that it was still in use in commerce on or in connection with all of the goods identified in the '549 and '969 Registrations.

### B. Lumino's Products and Trade Channels

Lumino's product listings now includes a wide variety of window treatments, among them drapery hardware and window coverings. Lumino designs all of its products and sells those products in the United States, including through Menard's, Lowe's, Walmart, Wayfair, Amazon, Kohl's and its own online store. In turn, retailers sell Lumino products using both Lumino's own branding or their own private brands.[2] Lumino's products' retail prices range from $9.99 to $99.

---

[2] For example, on Lumino products on Wayfair are sold using the Lumino name, but products sold online at Lowe's are promoted using its "Allen+Roth" name.

Products sold using Lumino's branding generally take one of two forms.  In the first, products are displayed in proximity to the Lumino Logo.  For example, Lumino's products are presented using its logo on its own website, on its Amazon brand page, in google search results, and on product packaging.



In the second form, the plain LUMINO Mark without any other identifiers, appears with an image of the product and a brief description.  For example, Lumino's products are presented this way when scrolling through an online retailer's product offerings.

### C. Lumi Home Furnishings

Lumi was formed and incorporated in the State of North Carolina in November 2017, before moving its principal operations to Georgia in 2018 and 2019, to act as the exclusive U.S. importer and distributor of home furnishing products purchased from Golden Champion Industrial Limited, a British Virgin Islands limited company ("Golden Champion"). Golden Champion is a subsidiary of King Koon Industrial Corp. ("King Koon"), a Taiwanese corporation. Mr. Li-Ming Cheng, a Taiwan resident, is the majority shareholder of both King Koon and Golden Champion

Lumi is headed by its president Ryan Lin, who is also an employee of King Koon. In his capacity as an employee of King Koon, Mr. Lin further performs marketing services for Golden Champion accounts. Since 2014, King Koon has owned a European Community Trademark as pictured below.



Lumi also currently owns U.S. Trademark Registration No. 6,310,512 (the "LUMI Mark") as pictured below.



This LUMI Mark matured out of federal trademark application U.S. Serial No. 88/830,799, filed by Mr. Cheng in his individual capacity in March of 2020 on an "intent to use basis." That application indicated that the LUMI Mark would be used in connection with grab bars, bolts, couplings, door handles, fittings of metal for windows, curtain holders, indoor window blinds, and other goods.[3] In January 2021, a "Statement of Use" was further filed on Mr. Cheng's behalf, stating that the LUMI mark was first used in commerce "as early as June 10, 2020," and allowing the application to proceed to registration. This "Statement of Use" was accepted in February, and its registration was granted in March of 2021.

In 2023, two documents assigning Mr. Cheng's rights in the LUMI Mark to Lumi were recorded with the USPTO. First, in November, a trademark assignment agreement signed by Mr. Cheng and Lumi was filed, noting November 20, 2023, as the effective date of the assignment (the "November Assignment"), which transferred Mr. Cheng's rights, title, and interest in the Lumi Mark. In December of 2023, another trademark assignment was filed and recorded with the USPTO, signed only by Mr. Cheng, and noting May 15, 2020, as the effective date (the "December Assignment"). While Lumi acknowledges that

---

[3] Before Mr. Cheng applied to register the LUMI Mark, King Koon employees submitted a different "Lumi Logo" for a preliminary review by the U.S. Patent and Trademark Office ("USPTO") as pictured below. However, that review suggested the mark in that form was not sufficient for a trademark application.

the latter assignment is part of the USPTO and summary judgment record, it nevertheless disputes its "veracity." The December Assignment also purports to transfer Mr. Cheng's entire interest and goodwill in the Lumi Mark. On September 10, 2025, a "Corrective Assignment" was filed on behalf of Mr. Cheng, seeking to expunge the December Assignment from the Lumi Mark's record.

The parties dispute the process that led to the development of the LUMI Mark. In support of its creative process, Lumi offers evidence that, while working in his capacity as president of Lumi, Ryan Lin developed the LUMI Mark. Lumino offers evidence that Ryan Lin was working in his capacity as an employee of King Koon which ultimately made the decision for Lumi to adopt the LUMI Mark.

### D. Lumi's Product And Trade Channels

Over the past seven years, Lumi has sold its home products, including window treatments, through its own website and through retailers, including Target, Walmart, The Home Depot, Overstock, Wayfair, Lowe's, Amazon, JC Penney, and Zulily. Unlike Lumino, however, Lumi *only* sells its products using Lumi branding, which takes three forms: (1) Lumi uses the LUMI Mark on its website, product packaging, and Amazon brand page; (2) Lumi will use the Lumi Logo for other online sites and retailer locations as below; and (3) Lumi products offered online retailer websites are identified with just the term Lumi.









### E. Evidence of confusion[4]

The parties dispute whether any actual confusion has occurred.  Lumi insists there has been none.  However, Lumino submitted evidence of three instances where either it or Lumi were mistakenly contacted.  In the first contact, a caretaker reached out to Lumi regarding a broken handle for window blinds that "[she and her patient] ordered [] thru Amazon." (Dkt. #90-8.)  The blinds they ordered were sold under the Biltek brand but inexplicably arrived in a Lumino box with a paper insert containing Lumi's contact information. (Dkt. #110.)  In the second mistaken contact, a customer reached out to Lumino via the Lumino Website after the Lumi product he purchased from Home Depot was missing "the hardware box with the brackets and screws."  (Dkt. #79-14.)  In the third such contact, a Lowe's customer service employee contacted Lumino in July 2025 for help in addressing a problem with a Lumi cellular shade.  (Dkt. 86, at 175:6-19; 185:3-9.)

### OPINION

## I.  Motion to Dismiss

Lumi asserts seven counterclaims for relief. In Count I, Lumi seeks a declaratory judgement that its use of the LUMI Mark does not infringe on Lumino's rights in the LUMINO Marks.  In Counts II-VII, Lumi seeks an order canceling the '549 and '969

---

[4] After filing its reply brief, Lumi moved this court for leave to supplement its proposed findings of fact with survey evidence and an expert report interpreting its results.  However, Lumi was on notice of this court's deadlines *and* informed of this court's expectation that the parties undertake discovery in a manner that allows them to make or respond to dispositive motions within those deadlines.  (Dkt. 64.)  Despite these instructions, Lumi did not begin its survey until *after* Lumino had already filed its brief opposing Lumi's motion.  Accordingly, Lumi's motion is denied, and its supplemental materials will not be considered at this stage, although the court will resolve as to whether the survey results and expert report may be timely for use at trial.

Registrations, alleging that Lumino violated the Lanham Act, 15 U.S.C. §§ 1051 et seq., when it: (a) had no bona fide use of the LUMINO Mark in commerce in connection with the goods identified before filing their application (counterclaims II & V); (b) never used the LUMINO Mark in commerce in connection with all of the goods identified in its applications (counterclaims III & VI); and (c) knowingly and intentionally misrepresented its use of the LUMINO Mark in commerce in connection with the goods they identified (counterclaims IV & VII).

Lumino moves to dismiss Counts II-VII of the countercomplaint under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim for which relief may be granted. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). However, where allegations are contradicted by written exhibits attached to the counter complaint, those exhibits may trump the allegations. *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010).

As a threshold issue, Lumino argues that counterclaims II, III, V, and VI, must be dismissed under 15 U.S.C. § 1065, because the '549 and '969 Registrations are now "incontestable," meaning they "can only be cancelled based on allegations of fraud, genericness, functionality or abandonment." (Dkt. #114, at 5.) However, § 1065 allows for exceptions to this general bar for petitions filed "under paragraphs (3), (5), and (6) of

section 1064." In particular, the court is satisfied that counterclaims III and VI, alleging that the LUMINO Mark was never used in commerce, may be raised under § 1064(6), which allows petitions "any time after the 3-year period following the date of registration, if the registered mark has never been used in commerce on or in connection with some or all of the goods or services recited in the registration." However, counterclaims II and V do not fit into any of § 1065's exceptions and, therefore, must be dismissed for failure to state a claim upon which relief may be granted.

### A. Counterclaims III and VI

Lumi contends that Lumino has never used its mark in commerce for some or any of the goods recited in their '549 and '969 Registrations and requests cancellation of both marks under § 1064(6). When seeking registration of a mark, applicants are required to include "[a] list of the particular goods with which the applicant uses or intends to use the mark." 37 CFR § 2.32(a)(6). Relevant here, Lumino's attorney of record attested that the LUMINO Mark *was* in use in commerce as to: "drapery hardware, namely, traverse rods, poles, curtain rods and finials" for the '549 Registration; and "[c]ellular shades, Venetian blinds, faux wood blinds, woven wood shades and vertical blinds," for the '969 Registration. Moreover, the mark is deemed "in use" in commerce provided:

> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
> (B) the goods are sold or transported in commerce

15 U.S.C. § 1127. Further, in the absence of fraud, the use of some but not all goods listed

on an application or registration is *not* fatal, subject to amendment deleting the goods for which the mark had not been used. *Ranch v. Tribe*, 78 U.S.P.Q.2d 1696, *2-3 (T.T.A.B. 2006).

In support of an inference that Lumino has never used the LUMINO mark in commerce on goods for either of its Registrations, Lumi alleges that: (1) Lumino operates as a distributor for Intercrown, which produces and supplies these goods to Lumino for distribution; (2) Lumino distributes and sells products under other brand names; (3) as of 2018, Lumino's Website did not specifically state that products were sold under its own name, nor did it advertise any offering of window shades or blinds; and (4) this remained true on the Lumino website until as late as November 2022. (Dkt. #66, at 21-22, ¶¶ 24, 25, 30, 31.) Still, documents attached to Lumi's complaint demonstrate otherwise. First, screenshots of the earliest version of Lumino's Website that Lumi attached *does* state that Lumino is selling its products direct to consumers online though Wayfair. Additionally, the Lumino logo *is* listed with the Wayfair logo, just as other brands are listed with other retailers. Second, in the updated screenshots of its Website, Lumino explicitly listed itself among brands it sold under *and* added window blinds/shades to its product offerings. (Dkt. #104 at 10 (citing Dkt. #66 at 21, ¶ 26).) Finally, specimens from Lumino's Combined Declarations of Use and Incontestability show Lumino branded drapery hardware and window blind products for sale on Amazon.com. (Dkt. #66-10, at 8; Dkt. #66-11, at 9-26.) Because of these attached documents, Lumi's counterclaim on that Lumino never using its Mark in commerce is undermined.

13

**B. Counterclaims IV and VII**

In contrast, Lumi ha properly alleged that Lumino knowingly and intentionally misrepresented its use of the LUMINO mark in commerce on its application and/or maintenance of the '549 and '969 Registrations, which may result in cancellation of both marks under 15 U.S.C. § 1064(3). In fairness, fraud claims are subject to Rule 9(b)'s heightened pleading standard, requiring that a "complaint must state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014) (quotation marks omitted).

"Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed.Cir.1986). Specifically, fraudulent procurement occurs where the applicant either:

> [1] withholds from the Patent and Trademark Office material information or fact which, if disclosed to the Office, would have resulted in the disallowance of the registration sought or to be maintained or [2] makes a deliberate attempt to mislead the PTO into registering the mark by presenting materially false and misleading information to the PTO when seeking the trademark registration.

*Solo Cup Operating Corp. v. Lollicup USA, Inc.*, No. 16 C 8041, 2017 WL 3581182, *2 (N.D. Ill. Aug. 18, 2017) (internal citations and quotations omitted).

Lumino's representations to the USPTO during its initial application and Combined Declarations of Use and Incontestability will be examined separately. The court begins its

14

analysis with Lumino's general arguments that Lumi has not adequately alleged *intent* with respect to any of its claims of fraud on the USPTO.  Certainly, intent to deceive the USPTO is an indispensable element of the analysis in a fraud case. *See In re Bose Corp.*, 91 USPQ2d at 1941.  However, "intent, as a condition of mind of a person, may be averred generally." *DaimlerChrysler Corp. v. American Motors Corp.*, 94 USPQ2d 1086, 1088 (TTAB 2010) (citing Fed. R. Civ. P. 9(b)).  Thus, Lumi has satisfied this requirement by alleging that "Lumino knowingly and intentionally misrepresented its actual use of the LUMINO Mark in commerce in connection with the goods identified" through the declaration of its "attorney of record" that "the LUMINO Mark was in use in commerce on or in connection with all of the goods identified in the application[s] that matured into the '549 [and '969] Registration[s]" and "declared that the LUMINO Mark had been in continuous use in commerce for five consecutive years after the date of registration."

### 1. Applications

Specifically, in October 2017, Lumino submitted applications for trademark registration that eventually matured into the '549 and '969 Registrations.  To support the applications' Statements of Use, Lumino's attorney of record submitted photographs of packages bearing the LUMINO Mark, along with shipping and product labels.  While Lumi contends that these photographs misrepresented the LUMINO Mark's use in commerce for the identified goods, Lumi also argues that a plausible inference exists that Lumino's submissions mislead the USPTO because, when Lumino submitted its applications in 2017, its use of the LUMINO Mark was, as a distributor for other brands and *not* used in connection with the goods claimed in the applications.  To support this inference, Lumi

relies on its own allegations that: (1) in October 2017, Lumino was acting as a distributor for a foreign supplier, Intercrown, and under other brand names, but still did not operate a consumer-facing website; (2) when it did start a consumer-facing website in 2018, it only offered drapery hardware products; and (3) Lumino itself was not held out as a consumer brand until later.

Based on these allegations, the court agrees that a plausible inference may arguably be made that Lumino misrepresented to the USPTO in its original applications that the LUMINO Mark was being used in commerce when in fact it was only being *displayed* on shipping boxes after customers had already selected and purchased products from retailers, in-store or online, under alternate brand names, identifying the distributor, not the source of the good.  *See Application of Pennsylvania Fashion Factory, Inc.*, 588 F.2d 1343, 11345 (C.C.P.A. 1978) ("trademark use is not established where goods are displayed in appellant's retail store without the words sought to be registered, are selected and purchased by a customer, and are thereafter placed in a bag, for the convenience of the customer in carrying them away, bearing words which are the trade name of its store.").  Moreover, the court agrees that a plausible inference exists that these misrepresentations were material because they are the only averments from Lumino regarding its use of the LUMINO Mark in commerce, at least for the goods identified in its applications.

Lumino also argues that Lumi's allegations are insufficient because documents attached to the counterclaims contradict Lumi's allegations.  In particular, Lumino contends that the images of boxes bearing Lumino stickers and statements on its website demonstrate use in commerce at the time of their application, but these images are

insufficient by themselves to foreclose all reasonable inferences supporting Lumi's contention. First, "the mere fact that appellant's goods are placed in bags [in this case, in boxes that bear the words sought to be registered] during a particular phase of the transportation process does not, *Ipso facto*, establish trademark usage of those words." *Application of Pennsylvania Fashion Factory, Inc.*, 588 F.2d 1343, 1346 (C.C.P.A. 1978). As a practical matter, the photos and labels also do not speak for themselves or show that the goods contained are what Lumino alleges, shipped to the labeled destination, or that the labels were applied in the ordinary course of business. Accordingly, mere pictures of boxes alleged to contain the specified goods are insufficient.

Second, the Lumino Website is ambiguous as to when it started selling products directly to consumers through Wayfair. In fact, the Lumino's Website was first available in August 2018 states, "Because of [the success of selling products at mass market retailers] [Lumino has] now expanded to selling direct through online channels such as wayfair.com." (Dkt. #88-8, at 10.) However, because the website indicates that Lumino is only "now" expanding to direct sales *and* Lumino's Website was not available until August 2018 -- some ten months after the applications were submitted -- it is reasonable to infer that Lumino was *not* engaging in direct sales with its mark at the time submitted.

Therefore, the court concludes a plausible inference may be drawn from the counterclaims that Lumino misrepresented the use of the LUMINO Mark in commerce in its application to the USPTO when it submitted images of boxes with Lumino stickers and intended to do so.

### 2. Declarations of Use and Incontestability

On August 22 and September 21, 2023, Lumino also filed a Combined Declaration of Use and Incontestability under Sections 8 & 15 to maintain '549 and '969 Registrations, respectively.  In their declarations, Lumino's attorneys of record averred that the Lumino Mark had "been in continuous use in commerce for five consecutive years after the date of registration . . . and is still in use in commerce on or in connection with all goods."  The '549 and '969 Registrations have registration dates of May 22 and June 12, 2018, respectively.  As discussed above, however, there is a plausible inference that the LUMINO Mark was not in use in commerce until it first published its website in August 2018, a reasonable trier of fact might also plausibly infer that the Lumino Mark was *not* in use for five consecutive years after the date of registration.  Additionally, a plausible inference exists that any misrepresentations to the contrary were material, if for no other reason than that continuous use after the date of registration is necessary for incontestability.  Accordingly, Lumino has alleged viable counterclaims for which relief may be granted and Lumino's motion to dismiss must be denied for counterclaims V and VII.

## II. Motions for Summary Judgment

As noted, parties have cross-moved for partial summary judgment on certain claims raised in Lumino's first amended complaint.[5]  In particular, Lumino has moved for

---

[5] In its amended complaint, Lumino asserts seven claims for relief: Count I, federal trademark infringement; Count II, common law trademark infringement; Count III, federal unfair competition; Count IV, common law unfair competition; Count V, cancellation of U.S. trademark registration '512 for likelihood of confusion; Count VI, cancellation of U.S. trademark registration

summary judgment on Count VI, while Lumi has moved for summary judgment on Counts I-IV.

Courts apply the usual Rule 56 standard in reviewing cross-motions for summary judgment, but must be careful to draw reasonable inferences in the correct direction depending on the movant and non-movant. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.,* 293 F.3d 402, 404 (7th Cir.2002). In particular, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Carmichael v. Village of Palatine,* 605 F.3d 451, 460 (7th Cir.2010) (party seeking summary judgment has the initial burden of proof). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, in evaluating summary-judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). Of course, the court may not weigh conflicting evidence or make credibility determinations, which is the jury's role, *Omnicare, Inc. v. UnitedHealth Grp., Inc.,* 629 F.3d 697, 704 (7th Cir.2011), and must consider only competent evidence of a type otherwise admissible at trial. *Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir.2009).

### A. Lumino's Motion for Partial Summary Judgment

Lumino moves for summary judgment on count VI of its First Amended Complaint,

---

'512 for illegal assignment; and Count 7, cancellation of U.S. trademark registration '512 for fraud during prosecution.

requesting the court to cancel Lumi's U.S. Trademark Registration No. 6,310,512 for violating the anti-trafficking provision of 15 U.S.C. § 1060(a)(1):

> A registered mark or a mark for which an application to register has been filed shall be assignable with the good will of the business in which the mark is used, or with that part of the good will of the business connected with the use of and symbolized by the mark. Notwithstanding the preceding sentence, no application to register a mark under section 1051(b) of this title [intent-to-use applications] shall be assignable prior to the filing of an amendment under section 1051(c) of this title to bring the application into conformity with section 1051(a) of this title or the filing of the verified statement of use under section 1051(d) of this title, except for an assignment to a successor to the business of the applicant, or portion thereof, to which the mark pertains, if that business is ongoing and existing.

In other words, applicants may not assign their rights to a trademark application filed on an intent-to-use basis unless the applicant also either transfers the business to which the mark pertains or previously amended the intent-to-use application to an "in-use" application or filed a verified statement of use.

Here, Mr. Cheng and Lumi apparently violated this prohibition.  First, in March 2020, Mr. Cheng filed the Lumi mark application on an intent-to-use basis.  Then in clear and unambiguous language, the December Assignment purported to assign Mr. Cheng's interest in the LUMI Mark and its associated goodwill to Lumi effective in May 2020.  Moreover, before this latter date, Mr. Cheng had not amended the application to be an in-use application or file a statement of use.  Further, this transfer occurred without the transfer of any existing business, or portion thereof, to Lumi.  Finally, because the December Assignment was duly executed and filed with the USPTO, it is *prima facie* evidence of execution.  15 U.S.C. § 1060(a)(3).

Based on this evidence of a § 1060(a)(1) violation, Lumino argues that the registration of the LUMI Mark must be cancelled. *See Emerald Cities Collaborative, Inc. v. Roese*, 666 F. App'x 908, 914 (Fed. Cir. 2016) ("because the Agreement violated § 1060(a)(1), we further conclude that the [USPTO Trademark Trial and Appeal Board] did not err in cancelling the registration of the mark"). However, the record at summary judgment has left unsettled whether Mr. Cheng actually assigned his rights in the LUMI Mark in May 2020. Specifically, a month before the December Assignment was filed, the November Assignment, which also purported to assign all of Mr. Cheng's rights in the LUMI Mark to Lumi, was filed with the USPTO with an effective date in November 2023. Notably, this effective date is *after* the statement of use was filed on Mr. Cheng's behalf in January 2021. And just like the December Assignment, the November Assignment is *prima facie* evidence of when Mr. Cheng assigned his rights to the LUMI Mark.

Nevertheless, Lumino argues that the court should not as a matter of law consider the earlier November Assignment or any other extrinsic evidence to determine when Mr. Cheng assigned his rights. More specifically, Lumino argues that because the language of the December Assignment clearly and unambiguously assigns Mr. Cheng's rights in the LUMI Mark to Lumi effective in May 2020, extrinsic evidence to the contrary cannot be introduced to create ambiguity. *See Mathews v. Sears Pension Plan*, 144 F.3d 461, 466 (7th Cir. 1998) ("If a written contract is clear, that is, if reading it one doesn't sense any ambiguity, gap, or contradiction that makes one doubt one's ability to understand the contract merely by reading it, the court normally won't look further for evidence of meaning.") However, in limited circumstances "parties are allowed to present extrinsic

21

evidence to demonstrate that although the contract looks clear, anyone who understood the context of its creation would understand that it doesn't mean what it seems to mean." *Id.*  In particular, evidence admitted under this doctrine of extrinsic ambiguity "must be objective; that is, it must not depend on the credibility of testimony (oral or written) of an interested party -- either a party to the litigation or (a natural extension, though one we cannot find a case discussing) an agent or employee of the party."  *Id.* (collecting cases).

The November Assignment may be considered under this exception.  Notably, like its arguable December successor, the November Assignment, too, is written, unambiguous, and as a duly executed and recorded assignment, *prima facie* evidence that may be relied upon to create an ambiguity as to when  Mr. Cheng's interest assigned his interest.  This would be true regardless of which Assignment benefitted Lumino, and tellingly, Lumino does not even argue why the court should only credit the December Assignment as *prima facie* evidence while excluding the preceding November Assignment.  Accordingly, the court finds that there is ambiguity in whether Mr. Cheng intended to assign his rights to Lumi in May 2020 or November 2023.

In a typical contract case, the court would resolve this arguable ambiguity, since the interpretation of a written contract is generally treated as an issue of law.  *Cook Inc. v. Bos. Sci. Corp.*, 333 F.3d 737, 742 (7th Cir. 2003).  However, this "rule is otherwise when as in this case the resolution of the interpretive issue requires . . . an inference from multiple pieces of evidence, a traditional task of a finder of fact."  *Id.* (citing *Coplay Cement Co. v. Willis & Paul Group*, 983 F.2d 1435, 1438 (7th Cir. 1993)).  Because this ambiguity must

be resolved by a jury, the court will deny Lumino's motion for summary judgment as to Count VI.

### B. Lumi's Motion for Partial Summary Judgment

Lumi separately moves for summary judgment on Counts I-IV of plaintiff's first amended complaint.  For each count, Lumi's sole contention is that there is no reasonable inference that a likelihood of confusion exists between its use of the LUMI Mark and Lumino's use of the LUMINO Mark.  Accordingly, the court's focus is on this issue.

To begin, likelihood of confusion is a question of fact, and rarely appropriate to decide on a motion for summary judgment. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008).  However, "[a] court may grant summary judgment even if there is a genuine issue of material fact as to one or more of the seven factors, as long as no reasonable jury, looking at the seven factors as a whole, could conclude that there is a likelihood of confusion." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015).  The factors courts are to analyze in determining whether consumers are likely to be confused are:

> (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another.

*AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir.2008).  While "no single factor is dispositive," three factors -- the similarity of the marks, actual confusion, and the defendant's intent -- are "particularly important." *Id*.

1.  **Similarity Between The Marks In Appearance And Suggestion**

"To determine whether two marks are similar, [courts] view the marks as a whole."

*AutoZone, Inc.*, 543 F.3d at 929.  This requires courts to compare the marks based on the

realities observed by consumers in the marketplace, not a direct comparison.  *Id.* at 930.

Additionally, "the test is not whether the public would confuse the marks, but whether the

viewer of an accused mark would be likely to associate the product or service with which it

is connected with the source of products or services with which an earlier mark is

connected."  *Id*. (quoting *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275

(7th Cir.1976)).

Here, the parties' marks take multiple forms depending on how a consumer searches

for window treatment products.  Both parties have stylized logos that can be seen on their

packaging, websites, and online retailer brand pages.  These logos have diverse features.

For example, Lumi's logo uses the color orange, is stylized to resemble a house, and uses

the phrase "home furnishing."  In contrast, Lumino's logo has a blue design and has the

added phrase "beautiful home décor."  Moreover, at least on packaging and respective

websites, these distinctions are relatively apparent.  However, when scrolling through

window treatment selection for online retailers -- unquestionably a growing part of the

consumer market -- products are listed with the plain text of either "Lumi" or "Lumino,"

with or without a brief description of the product itself.  Viewing the facts in the light most

favorable to Lumino, as the court must at this stage, the similarities in the parties' marks

may well lead to confusion, especially for consumers scrolling through an online retailer's

24

window treatments options or as to a mistaken belief that Lumi and Lumino products are sourced from the same company.

Lumi nevertheless argues the finding of a risk of confusion for this factor ignores marketplace realities, which is the opposite of what the law requires. More specifically, Lumi insists that it is the *logos* not the marks that are presented to consumers viewing the parties' products, and in this context, confusion is unlikely. *See Packman*, 267 F.3d at 643 (finding that identical words were not likely to cause confusion when the words' appearances do not resemble each other). However, unlike in *Packman*, there are multiple ways that consumers interact with the parties' marks alone. Moreover, Lumi has not presented evidence from which a jury would find that consumers only view their logos, as opposed to their remarkably similar names. Accordingly, the court concludes that a reasonable jury could find that this factor favors Lumino.

## 2. Similarity Of The Products

The relevant inquiry with respect to the similarity of the products factor is not whether the products are interchangeable, but whether the products are the kind the public might very well attribute to a single source. *AutoZone*, 543 F.3d at 931. Both parties have an extensive catalogue of goods for sale; however, both have explicitly listed cellular shades, roller shades, Roman shades, rod sets, brackets, holdbacks, and finials. So, at the very least, this factor supports Lumino's position that Lumi infringes on its trademark by using its mark as to those products.

Examining the entirety of the parties' product lines also favors Lumino. Both parties sell window treatments. Although the shared inventory of the parties appears to be limited

25

to the seven items just mentioned, consumers would likely expect Lumino, as the producer of window treatments, to expand its product line into the other styles, including those that only Lumi produces. *See AutoZone*, 543 F.3d at 931 ("The rights of an owner of a registered trademark extend to any goods or services that, in the minds of consumers, might be put out by a single producer.")  Based on Lumino's extensive product catalogue alone, therefore, it would not be surprising to start producing different and overlapping styles of hardware drapery and window coverings as consumer preferences shift.  Accordingly, even where their product lines don't currently overlap, this factor favors Lumino.

### 3. Area And Manner Of Concurrent Use

In considering this factor, courts look at "whether there is a relationship in use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 681 (7th Cir.2001). Courts also look to whether the parties use the same channels of commerce, target the same general audience, or use similar marketing procedures. *Id*. at 681-82.

Lumino has entered evidence upon which a jury could make these inferences in its favor as well.  First, it is undisputed that both parties' goods are available for sale under their own brands at Amazon, Wayfair, and Walmart.  Second, the parties' products are listed near each other when searching through the online retailer's websites. Third, the parties' products are often offered at roughly the same price points, $10-$100, to the same customers -- homeowners.  Altogether, therefore, a reasonable jury could also infer that this factor favors Lumino.

26

In response, Lumi argues that the overlap in retail stores is merely "superficial" due to Lumino's history of selling its goods under separate, private labels rather than solely its own mark. While undermining Lumino's claims regarding a likelihood of confusion for wholesalers or retailers using their own brands, this does nothing to affect the reasonable inference that at least for three, major retailers in which the parties use their own marks for competing product, then a risk of confusion is real. Accordingly, a jury would likely find this factor similarly favors Lumino.

### 4. Degree And Care Likely To Be Exercised By Consumers

Generally, courts considering this factor assume that "[t]he more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *CAE, Inc.*, 267 F.3d at 683. "When customers use a lesser degree of care, this supports a finding that there is a likelihood of confusion." *Sorensen*, 792 F.3d at 730.

Although the bulk of the parties' products are relatively inexpensive, priced from $20 to $40, consumers may well exercise care when purchasing new window treatments. Specifically, as both parties recognized, besides price, consumers also consider the product's look, function, reviews, how long the product has sold, and the brand's reputation. These considerations are appropriate because window treatments are expected to last for significant durations and need to conform to other interior design decisions in one's home. These considerations, at minimum, would cause an ordinary prudent buyer to read the packaging clearly and understand its source. Accordingly, a jury would likely conclude that this factor favors Lumi.

### 5. Strength Of The Plaintiff's Mark

"The 'strength' of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." *CAE*, 267 F.3d at 684. "The stronger the mark, the more likely it is that encroachment on it will produce confusion." *AutoZone*, 543 F.3d at 933. The strength analysis involves "two considerations: (1) the mark's inherent strength, that is, where it falls on the continuum between a generic and an arbitrary term; and (2) public association of the mark with a source." *S Indus. Inc. v. Stone Age Equip. Inc.*, 12 F. Supp. 2d 796, 818 (N.D. Ill. 1998) (citing *Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213, 219-20 (7th Cir. 1978)).

### a. Lumino's Conceptual Strength

Not surprisingly, the parties take significantly different views on the conceptual strength of Lumino's mark. In determining a mark's distinctiveness, the Seventh Circuit has recognized three levels: descriptive, suggestive, and fanciful or arbitrary. Descriptive marks are those that "merely describe[] the ingredients, qualities, or characteristics of an article of trade or service." *Gimix, Inc. v. JS&A Group, Inc.*, 699 F.2d 901, 906 (7th Cir. 1983). Suggestive marks are those that are "suggestive of the character of the goods or the properties which the owner of the mark wishes the public to attribute to them." *Indep. Nail & Packing Co. v. Stronghold Screw Prods., Inc.*, 205 F.2d 921, 925 (7th Cir. 1953). Fanciful and arbitrary marks are "coined" words that have been invented for the sole purpose of functioning as a trademark and often "comprise words which are either totally unknown in the language or completely out of use at the time, as with obsolete or scientific terms." *McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1171 (7th Cir. 1986).

28

Here, a jury would likely conclude that the Lumino Mark is suggestive and has some inherent strength, particularly where the products are competing in the same market. "Lumino" does not have a direct meaning in English, indicating that it may be considered fanciful at first glance. However, a consumer would most likely connect it to similarly spelled or pronounced English words, such as the word "luminous," meaning "emitting or reflecting usually steady or glowing light," or words in other languages that use "lumin" or "lumen" as a common root which, in Latin, means light.

These definitions do not adequately describe Lumino's articles of trade. As has been discussed at length, Lumino sells window treatments. Rather than emit or act as a source of light, Lumino's window treatments arguably serve a different purpose, working to limit and control or at least alter the light passing through windows. However, with some imagination, consumers would be able to connect light to window treatments. Accordingly, a jury would likely find the Lumino Mark suggestive. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 952 (7th Cir. 1992) ("If [a mark] stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive.")

Lumino argues that it is far more likely that the LUMINO Mark is arbitrary or fanciful because it has no direct English meaning and was created by its president based on the names of his children. However, a mark's meaning and distinctiveness depend on how it is perceived by consumers in the marketplace, not a founder's private, inspirational story. *See Echo Travel, Inc. v. Travel Assocs., Inc.*, 870 F.2d 1264, 1270 (7th Cir. 1989) ("A party's subjective, self-serving view of its own alleged trademark is not competent evidence on which to base a finding of secondary meaning"). Additionally, Lumi has produced

29

evidence of third-party registrations in the home décor industry that share the Lumin segment, suggesting that it intentionally adopted a descriptive or suggestive meaning in the field. *Spireon, Inc. v. Flex Ltd.*, 71 F.4th 1355, 1363 (Fed. Cir. 2023). Accordingly, it is unlikely a jury would conclude that the Lumino mark is arbitrary or fanciful.

### b. Lumino's Commercial Strength

Commercial strength can be determined by "direct consumer testimony; consumer surveys; the exclusivity, length, and manner of use of the mark; amount and manner of advertising for the mark; the owner's amount of sales and number of customers; how established the owner's place in the market is; and intentional copying." *Epic Sys. Corp. v. YourCareUniverse, Inc.*, 244 F. Supp. 3d 878, 898 (W.D. Wis. 2017). Echoing these considerations, Lumino highlights that it has: sold window treatment products since 2001; spent millions of dollars advertising; generated hundreds of millions of dollars in revenue; and been placed in the top 10 of Amazon's product categories.

However, other evidence suggests the LUMINO Mark may be weak. First, Lumino has inconsistently used its mark when selling products to consumers, indicating that it may be a weaker mark. *See Sorensen*, 792 F.3d at 731 ("Inconsistent use makes a symbol less helpful to consumers as a source indicator, and therefore a weaker mark."). As a result of this inconsistency, it is unclear how much of Lumino's purported sales volume is actually attributable to the Lumino brand, as opposed to the private labels under which Lumino product are also sold. Second, the presence of other "lumin" formative marks, including

an active application for another window treatment competitor.[6] *See Uncommon*, 305 F. Supp. 3d at 862 (the "wide use of similar terms by different companies further weakens the mark."). Given these facts, a reasonable jury would likely find that the Lumino Mark's is commercially weak, especially outside of window treatment products. However, given its inherent conceptual strength, a reasonable jury could still find that this factor favors Lumino, at least in the window treatment market.

### 6. Actual Confusion

"[E]vidence of actual confusion, if available, is entitled to substantial weight in the likelihood of confusion analysis." *CAE*, 267 F.3d at 685. The Seventh Circuit has upheld a finding of consumer confusion based on "letters, phone calls, and inquiries received by the plaintiff." *Int'l Kennel Club*, 846 F.2d at 1090.  ).

In support of its argument that there has been actual confusion, Lumino highlights four pieces of evidence: (1) an email exchange produced from Lumi in discovery (dkt. 91-8); (2) an email received after a Lumi customer in New Jersey used the "contact us" function on the Lumino website (dkt. 79-14, pp. 14-16); (3) deposition testimony from its president about an employee's contact with this New Jersey customer (dkt. 86, at  pp. 134:7-16, 164:3-24); and (4) deposition testimony from its president about a conversation between a Lumino employee and Lowe's customer support (*id.* 175:6-19; 185:3-9).

Lumi challenges the admissibility of this evidence. As to Lumi's email exchange and an email Lumino received through its "contact us" page, those are properly before the court,

---

[6] For example, Lumino has objected to an application for LUMINA SHUTTERS (Serial No. 999153999).

are arguably offered for state of mind rather than truth of the matter asserted, and would be admissible under the Federal Rule of Evidence 803(6) regardless, as a record that was kept in the course of a regularly conducted activity or business. *E.g.*, *Maui Jim, Inc. v. SmartBuy Guru Enters.*, 459 F. Supp. 3d 1058, 1094 n.16 (N.D. Ill. 2020) ("communications between customer service representatives and customers fall into this Business Record exception to the rule against hearsay"). As to Lumino's deposition testimony, he did not communicate with the customers so his testimony cannot speak to what they said. However, he still has personal knowledge that these contacts happened and could testify that effect. In the event this does go to trial, those employee statements about what other individuals said are also likely to be admissible under Federal Rule of Evidence 803(3), to show customer confusion. *E.g., Comp–U–Tronix Discount Radar Detectors, Inc. v. Landmark Electronics Co.*, No. 90 C 6582, 1991 WL 236877, *3 (N.D. Ill. Oct. 30, 1991) (denying motion to strike affidavits "where employees state conversations which took place with customers" under Rule 803(3)).

In fairness, even if admissible, a reasonable jury may well discount the weight of some or all of this limited, anecdotal evidence because: being in the same retail market at the same time for seven years, there have been only *three* separate, alleged instances of confusion, *e.g., Packman*, 267 F.3d at 645 (holding that district court properly discounted four calls as de minimis); in only one of those three instances was the confusion by the purchaser of a Lumi or Lumino product, *id.* (friends and family who did not intend to purchase goods and as such, were not relevant consumers under the Lanham Act); and knowledge regarding the state of mind of the consumers involved is limited, *e.g., Smith*

*Fiberglass Prods., Inc. v. Ameron, Inc.*, 7 F.3d 1327, 1330-31 (7th Cir.1993) ("vague hearsay account of what may have been actual confusion" was properly discounted). Nevertheless, Lumino's evidence does reinforce the notion that *some* confusion has occurred, and based on that confusion and the other factors addressed above, a reasonable jury could find that there has been actual confusion between Lumi and Lumino.

### 7. Intent Of Lumi To "Palm Off" Its Product As That Of Lumino

This factor focuses on evidence that the defendant is attempting to pass off its product as having come from the plaintiff. *Packman*, 267 F.3d at 644. In its briefing, Lumino argues that Lumi intended to cause confusion because preliminary reviews suggested that the terms LUMI and LUMI HOME were insufficient for trademark registration, but Lumi proceeded to use the terms LUMI HOME FURNISHINGS anyway. Lumino also argues that this inference is corroborated by Lumi's continued use after being alerted to some confusion in 2022.

However, the record as a whole does not support this inference. First, the discussion on Lumi's preliminary review has no mention of Lumino, nor is there any evidence suggesting that Lumi was even aware of Lumino at the time. To the contrary, the record indicates that Lumi did not discover Lumino until 2022. Second, even if Lumi knew of Lumino before 2022, it is not necessarily indicative of bad faith by continuing to use its mark. *See Sands, Taylor*, 978 F.2d at 962 ("Even the defendant's refusal to cease using the mark upon demand is not necessarily indicative of bad faith."). Third, and most importantly, it appears undisputed that the mark "Lumi" was issued and in use by an affiliate in Europe *before* Lumino was even in the market under its name in the U.S.,

33

seriously undermining any argument that the LUMI Mark was registered to piggyback or steal existing customer goodwill in the LUMINO Mark.  Because the record does not support an inference that Lumi intended to cause confusion with the LUMI Mark, therefore, a reasonable jury would likely conclude that this factor favors Lumi.

In considering all of these factors and relative strengths, the court concludes that a reasonable jury could find for either party on the risk of confusion.  As such, the court will deny the Lumi's motion for summary judgment as to likelihood of confusion.

## III. Motion to Bifurcate Trial and Defer Damage Disclosure Deadline

Finally, Lumi has filed a motion to bifurcate trial and defer damages expert disclosures until after any finding of liability.  (Dkt. #120.)  Lumi contends that this procedure is consistent with this court's standard practice, will allow them to avoid unnecessary prejudice, and will not unfairly prejudice Lumino.  However, Lumi misunderstands this court's practice in bifurcating trials.  Specifically, it is *not* the court's practice to have a trial on liability, and if found, schedule a separate trial on damages for a later date.  Instead, the court's practice if liability is found, is for the trial to proceed immediately before the same jury on the question of damages.  Thus, only to the extent it is consistent with the court's standard practice, it will GRANT Lumi's motion to bifurcate the trial.

However, Lumi's motion to defer the damages expert disclosure until after any findings on liability must be denied for the same reasons.  At this time, Lumino has already incurred the costs associated with a damages expert and served their expert's report on Lumi.  Further delay in disclosing damages experts would only serve to unfairly benefit

Lumi by giving them additional time to develop a response and, of course, jeopardize other approaching trial deadlines.  For the same reasons, the court will deny Lumi's last-minute motion to continue any of the remaining deadlines, including the trial date itself.  (Dkt. #132.)

ORDER

IT IS ORDERED that:

1) Lumino's motion to dismiss counterclaims (dkt. #87) is GRANTED as to counter claims II and V and DENIED as to counter claims III, IV, VI, and VII.

2) Lumino's motion for summary judgment is DENIED (dkt. #69).

3) Lumi's motion for summary judgment is DENIED (dkt. #74).

4) Lumi's motion to supplement their proposed findings of fact is DENIED (dkt. #115).

5) Lumi's motion to bifurcate the trial and to defer damage expert disclosers is GRANTED IN PART AND DENIED IN PART (dkt. #120).

6) Lumi's motion to continue trial is DENIED (dkt. #132).

Entered this 19th day of December, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge